SWIFT, appellant, v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY.

*Life insurance — representations in application for policy — question of fact — construction of language in application — evidence — declarations of insured.*

In an application by plaintiff for insurance on the life of her husband, she stated that he was in good health, and usually had good health, that she had not concealed any material fact in relation to his health. To a question whether his parents, brother or sister had been afflicted with scrofulous disease, she answered no. To another question she answered that his mother died of scrofula. She further stated that one of his brothers died of an unknown disease, and one of his sisters of disease of the blood. She was not asked if her husband ever had scrofula. The insured person told the examining physician of the company that his mother died of scrofula, and in reply to a question said he never had any of that disease that he was aware of. He died about nine months after the issue of the policy of an abscess caused by scrofula. Evidence was given tending to show that the insured had, on several occasions some years previous to insuring, been in feeble health. Other evidence showed that, with one or two exceptions, his general health had always been good, and had been especially so, with the exception of a slight lameness, for about four years immediately preceding the issue of the policy. *Held* (1), that the question whether plaintiff and the insured misrepresented the true condition of the health of the insured was one of fact for the jury. *Held,* also (2), that the statement that the parents, brothers or sisters of the insured had not been afflicted with scrofulous disease, taken in connection with the statement that his mother died of scrofula, and his sister of disease of the blood, was not untrue, in such a way as to avoid the policy.

At the time the insured was examined he had an abscess. *Held,* that it was for the jury to determine whether he acted in good faith in the representation that he had no symptoms of scrofula that he was aware of.

It was in evidence that the word "unknown" disease was inserted in the application by defendant's agent, in lieu of the statement actually made, that the party did not know of what disease the brother died. *Held,* that it was for the jury to determine what construction should be put upon the word "unknown," whether as referring to the knowledge of the party, or of everybody.

Statements made by the insured to others than the insurance company and the physician in relation to his health, *held* inadmissible.

APPEAL from a judgment of nonsuit ordered at the Genesee circuit.

On the 25th of August, 1870, the defendant issued a policy insuring the life of William P. Swift, to the plaintiff, who was his wife,

in the sum of $3,000. The premium was paid on said policy until his death, in May, 1871.

Proof of the death was duly made by the plaintiff, but the defendant refused to pay, on the ground that there had been false representations made, as to the health, and condition of said Swift, and matters material to the risk had been concealed from it, by reason whereof the policy became void.

The cause was tried at a circuit court held in Genesee county, and the plaintiff was nonsuited. From that judgment she appealed. The allegations of the complaint being admitted by the answer, the defendant was permitted to open the case.

The defendant gave in evidence a paper, called a declaration, signed by the plaintiff, being a statement of her desire to insure the life of her husband, and that he was 30 years of age, and was in good health, and did usually enjoy good health; and that the answers to the interrogatories annexed to said declaration were true, and that she had not concealed or withheld any material fact in relation to his health, habits of life or condition, which might render an assurance on his life more than usually hazardous, or with which the directors ought to be made acquainted, and she declared that her answers should be the basis, and form part of the contract or policy with said company, and she warranted such answers to be true, and, if not true, she agreed that the policy should be void.

The plaintiff was asked if her husband ever had either of 20 diseases enumerated in the questions, of which scrofula was not one, and she answered in the negative.

She was asked whether the parents, brothers or sisters of her husband had been afflicted with insanity, or with pulmonary, scrofulous or any constitutional disease, and she answered no.

She was asked if his parents were dead, and she answered that his mother died at the age of forty, of *scrofula.*

She was asked how many brothers her husband had, she answered three, and that they had died, one at the age of 18, one at 19, and one at 26. The one who died at the age of 19, died of an unknown disease, the other two died of wounds received in the army. She was asked how many sisters he had, how many were dead, and the causes of their death. She answered that he had two sisters, one living, aged 41, the other died at the age of 14, of disease of the blood.

The defendant proved by several witnesses that in 1861, the

deceased entered the army as a soldier, and was then feeble, but was not in the hospital ; after he left the army he was well a good deal of the time, and part of the time unwell. He was lame from a sore in the groin, in 1869, for several weeks. In the spring of 1870 he was unwell, and some of the time lame. In 1869, he was confined to his bed a good deal of the time for two or three months. The sore in the groin healed up, but often would break out again.

The brother of Swift, aged 19, died when he, Swift, was a lad, of scrofula; it settled in the knee the leg had to be amputated. It broke out again and killed him.. The sister who died had swellings in her throat that were occasioned by what was called the king's evil; she died of scrofula. Swift's mother died of scrofula. She suffered from it a long time before her death.

In February, before Swift died, he was examined by a physician who found him sick, in a low condition, had an abscess in the back which was opened, and matter discharged from it. In or about March, one of his lungs was found to be diseased, an abscess had formed in the right lung, it burst and caused his death, and scrofula was the indirect cause of his death.

One of the witnesses at the trial, a physician, testified that it was important for the insurer to be informed that Swift's mother, and brother, and sister died of scrofula, and if he was himself scrofulous, it would furnish an objection to insuring him. If a doctor was told that an applicant for insurance was scrofulous and had an abscess, he would conclude it was scrofula. Scrofula is a hereditary disease. If informed that the mother was scrofulous, he would not deem it necessary to inquire as to the applicant's brother and sisters.

The plaintiff was herself sworn, and testified that her husband was repeatedly urged to insure in defendant's company by its agent. The agent read the questions and the husband answered them, and the agent wrote them down. In answer to the question as to the disease the brother died of, when about nineteen years of age, the husband answered he did not know, and the agent said he would write it down "unknown," and he did so. Plaintiff did not know Swift until after he left the army. They were married soon after, and lived together till his death; his health was good up to his last sickness. He was lame awhile, in 1869 — from four to six weeks. — attended, during that time, to his business every day. He recovered entirely from his lameness, and was not again lame until

his last sickness; never knew that he had any scrofulous affection. Witnesses, who served in the army with him, testified, that during the time he was in the army his health was good.

Another witness testified, that his health was good after he returned from the army. Saw him often; visited at his house, and Swift at his; Swift worked on the farm for the witness.

The physician who examined him, prior to issuing the policy, gave a certificate to the defendant as to the physical condition of Swift, and the propriety of insuring his life. He pronounced him to be a healthy man, free from any predisposition, either hereditary or acquired, to any constitutional disease.

The same physician was examined as a witness on the part of the defendant, and testified, that having seen in the answers of Swift to the interrogatories put by the company to him, that his mother died of scrofula, he asked Swift if he ever had any of that disease, and he said no ; and upon that answer witness based his answer to the question put to him as examining physician, whether there was any apparent predisposition to that disease. If he (Swift) had said that he had scrofula, it appearing that his mother died of scrofula, he should not have recommended him for insurance.

On his cross-examination, he testified that he had examined Swift two years before, with a view to insurance in another company; the examination was thorough, and he accepted him as a proper subject for life insurance. Found no indications about Swift, that would render him an improper subject for insurance.

On the trial the defendant offered to prove the statements of Swift on repeated occasions as to his bad state of health, and the disease with which he was troubled. The plaintiff's counsel objected to the evidence. The objection was overruled and plaintiff's counsel excepted.

The defendants moved for a nonsuit, on the ground that the plaintiff had been guilty of misrepresentation and concealment, in the application for insurance, in regard to the health of Swift, and as to whether he had scrofula or scrofulous affections, and as to his having any sickness or disease ; also, because Swift made misrepresentations as to the disease or cause of the death of his brother, and as to the taint of scrofula existing in the family.

The plaintiff's counsel insisted that the questions were questions of fact and not of law, and asked that they be submitted to the jury. The request was refused, and plaintiff's counsel excepted.

The court then held, as matter of law, that the policy was void from the time it was issued, and ordered a nonsuit.

*Peck & Bowen,* for appellant, cited *Rawls* v. *American Life Ins. Co.,* 36 Barb. 357; S. C., 27 N. Y. 282; Bliss on Life Ins., § 384; *Jefferson Ins. Co.* v. *Cothreal,* 27 Wend. 79; *Mallory* v. *Travelers' Ins. Co.,* 1 Ins. Law Jour. 843; *Sheldon* v. *Atlantic Ins. Co.,* 27 N. Y. 460; *Stone* v. *Flower,* 47 id. 566.

*George Bliss,* for respondent. If any untrue statement was made in the application the policy was void, even though not made intentionally or relating to a material fact, or known to the insured to be untrue. *Smith* v. *Ætna Life Ins. Co.,* 49 N. Y. 211; *Kelsey* v. *Univ. Life Ins Co.,* 35 Conn. 225; *Campbell* v. *N. E. Mut. Life Ins. Co.,* 98 Mass. 381; *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 163; *Mut. Benef. Life Ins. Co.* v. *Miller,* 2 Ins. Law Jour. 101; *Swick* v. *Home Life Ins. Co.,* id. 415; *Anderson* v. *Fitzgerald,* Law Rep., 4 H. L. 484; *Duckett* v. *Williams,* 2 Cromp. & M. 348. The concealment made by the insured in reference to his health was fatal to a recovery on the policy. *Valton* v. *Nat. Fund Life Assur. Co.,* 20 N. Y. 32; *Wainwright* v. *Bland,* 1 Mer. & R. 481; *Von Lindenau* v. *Desborough,* 3 C. & P. 353; *Vose* v. *Eagle L. & H. Ins. Co.,* 6 Cush. 42; *Cazenove* v. *Brit. Eq. Assur. Co.,* 6 C. B. N. S. 437; *Perrins* v. *M. & G. Trav. Ins. Co.,* 2 El. & El. 317; *In re Gen. Prov. Life Assur. Co.,* 18 W. R. 396.

MULLIN, P. J. The question whether the plaintiff misrepresented the state of health of her husband in an application for an insurance on his life, was one of fact, and should have been submitted to the jury.

Proof was given by the defendant tending to prove that he was in feeble health before entering and while in the army, and on two occasions after leaving it. But the plaintiff testified that she became acquainted with him in 1866, when they were married, and that, with the exception of lameness on two occasions, he enjoyed good health until his last sickness. His father testified to his good health up to the time of going into the army — with one exception, when it was found his lungs were affected — and to his good health subsequent to his return from the army. Two witnesses testified that he enjoyed good health during the time he was in the army.

If a disputed question of fact could be raised upon a trial, it

surely was raised in this case. The question was one of fact, and should have been submitted to the jury.

The defendant charges the plaintiff with both misrepresentation and concealment as to scrofula being the cause of the death of Swift's brother and sister.

The question put to the plaintiff was this: Have the parents, brothers or sisters of the party been afflicted with insanity, or with pulmonary, scrofulous, or any constitutional disease? Her answer was no. If this answer was proved to be untrue, the plaintiff was rightly nonsuited.

In considering the question of the truth of this particular answer, plaintiff's answers to other questions upon the same subject must be borne in mind. For if the answers to other questions informed defendant truly of the matters inquired into, the answer in question cannot be said to be untrue so as to avoid the policy. The question was put to the plaintiff to enable the company to know whether insanity, pulmonary, scrofulous, or other constitutional disease existed in the family of her husband.

If the answers conveyed to them the information that scrofula was a disease existing in the family, they had the information they needed to enable them to determine the propriety of taking the risk.

Plaintiff, in answer to a subsequent question, told them that her husband's mother died of scrofula. And in answer to another question she told them that her husband's sister died of disease of the blood.

It seems to me that when the fact was disclosed that the mother died of scrofula, and one of her daughters of disease of the blood, the existence of scrofula in the family was as clearly stated as if they had been told it was hereditary.

The question was not put to the plaintiff whether her husband had been afflicted with scrofula, and its existence in his system might well be inferred from the fate of his mother and sister.

But it was possible that the mother might be scrofulous, and yet a child be so little affected with it as not to exhibit any symptoms of it. But the examining surgeon says that, seeing by plaintiff's answers that his mother died of scrofula, he inquired of Swift whether he had ever had the disease or any symptoms of it that he was aware of, and he said no. Because of this answer the doctor omitted to advise the company not to accept the risk.

The answer of Swift to the doctor was not a warranty, but it was

a representation as to a most material fact, and it was untrue, if it is to be taken as a denial that he had had any symptoms of scrofula. The abscess in the groin which he had before the application for insurance was evidence of scrofula in his system.

But the answer was not an unqualified assertion that he had not had any symptoms of scrofula, but that " he had not had ' *as he was aware of.*' " He was, of course, aware of the existence of the abscess, but he might not know that it was any evidence of scrofula. That was a question of skill which a non-professional man might not be able to answer.

It was for the jury to say whether Swift was aware that he was afflicted with scrofula, or whether he was acting in good faith when he told the doctor that he had had no symptoms of scrofula that he was aware of.

It is said that the answer to the question, as to the disease of which his brother died was "unknown," was untrue. It is untrue if plaintiff is to be understood by the answer as saying that no person, not even a physician, knew of the cause of his death.

The plaintiff's counsel says, that the meaning of the witness was that it was unknown to him, and that the use of the phrase "*unknown*" was the work of defendant's agent, who, as appears by the evidence of the plaintiff, used the word in lieu of the language used by the witness, that he did not know of what disease his brother died. The answer would bear either construction, and I think the jury should have been permitted to say which was the correct one.

The statement of Swift as to his health and the cause of his lameness at any time, except to the defendants or the physician, were incompetent and ought to have been excluded, and, in the abstract of the evidence I have given, I have excluded them. They were admissible for no purpose whatever, and their admission must reverse the judgment and require a new trial unless there is clear, uncontradicted evidence of some breach of a warranty that must be fatal to a recovery.

While the question is not altogether free from doubt as to whether a breach of warranty is not proved, yet there are so many questions which should have been submitted to a jury, and they are so connected with those which tend to prove a breach of warranty, that the case should go back for another trial.

Judgment is reversed and a new trial ordered, costs to abide event.                          *Judgment accordingly.*